**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**KRONES, INC.,**

       Plaintiff,

    v.                                          Case No. 13-C-935

**BOMATIC, INC.,**

       Defendant.

## DECISION AND ORDER

This declaratory judgment action arises from business dealings between the parties regarding a molding machine that Plaintiff Krones, Inc. ("Krones") offered for sale. Defendant Bomatic, Inc. ("Bomatic") moves to dismiss the action for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and alternatively for discretionary dismissal under 28 U.S.C. § 2201 as an improper race to the courthouse. (ECF No. 9.)

Krones' amended complaint[1] asserts that the Court has personal jurisdiction over Bomatic pursuant to Wis. Stat. § 801.05(1), (3) and (5)(b). (Am. Comp. ¶ 8.) (ECF No. 12.) Krones alleges that, among other things, (1) Bomatic is engaged in substantial and not isolated activities within this state; (2) this action arises out of Bomatic's actions or omissions within this state; (3) this action arises out of services performed by Krones within this state for Bomatic, with Bomatic's authorization; (4)

---

[1] Pursuant to the Court's September 11, 2013, Order, Krones filed an amended complaint to correct the deficiencies in its jurisdictional allegations. Krones adequately alleges a factual basis for diversity jurisdiction under 28 U.S.C. § 1332.

Bomatic asserts it entered into a binding contract with Krones pursuant to documents that, if they formed a contract (though Krones asserts they do not), would provide for the application of Wisconsin law and confirm that such contract would be executed and performed in Wisconsin, conferring jurisdiction pursuant to Wis. Stat. § 801.05(5)(a) & (c); and (5) through its actions and the positions taken in this dispute Bomatic has purposefully availed itself of the protections and requirements of Wisconsin law and should reasonably expect to be subject to litigation in Wisconsin. (*Id.*) Bomatic asserts that none of these provisions apply and that hauling it into court under the circumstances presented by this case would violate due process.

In ruling on a motion challenging personal jurisdiction, the Court may consider matters outside the pleadings including, as here, competing affidavits submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When the Court considers personal jurisdiction without holding an evidentiary hearing, it must determine whether the plaintiff has made out a *prima facie* case of jurisdiction, resolving conflicts in favor of the plaintiff. *Id.*

Depending on a defendant's contacts with the forum state, a court may exercise general or specific jurisdiction. *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *See id.* Specific jurisdiction "requires that the defendant's contacts with the forum state relate to the challenged conduct." *Id.*

Krones relies on specific jurisdiction, although it does not concede that the

Court lacks general jurisdiction. Because the parties focus on specific jurisdiction, the Court also focuses its summary of facts and analysis on the specific-jurisdiction inquiry.

*Factual Summary*

Krones is a Wisconsin corporation selling bottling, filling, packaging and brewing equipment, and "provid[ing] lifecycle management services" to customers in North America. It actively solicits business in California and has at least one sales representative — Casey Farrell ('Farrell") — there. (Am. Compl. ¶ 11.) (ECF No. 12). Bomatic, a manufacturer and distributor of plastic containers produced using certain types of machinery and equipment manufactured and sold by Krones, has its sole offices and place of business in California. Other than the contested dealing Bomatic never purchased any product from a company in Wisconsin, never sent any employees to Wisconsin, and does not own any real or personal property in the state. (Hestehave Aff. ¶¶ 3, 7.) (ECF No. 9-1.)

The initial contact between Krones and Bomatic occurred late in 2010 when Farrell began to call on Bomatic in California. In about January 2011 David Raabe ("Raabe"), who works at Krones' headquarters in Franklin, Wisconsin, began a relationship with Bomatic by traveling to California and meeting with Bomatic management to discuss Krones' machinery and technology for potential use in Bomatic's operations. Subsequently Raabe and Bomatic continued to communicate, including by email, text messages, and telephone calls directed by Bomatic to Raabe

in Wisconsin. In approximately February 2011 Bomatic contacted Krones in Wisconsin and asked for preliminary quotations for certain types of blow molding machines for potential use in its operations. Krones prepared those quotations and additional information in Wisconsin and sent them to Bomatic in California, but Bomatic decided not to pursue a deal at that time. The parties periodically communicated during 2011, including communications directed by Bomatic to Krones' employees in Wisconsin. In late September 2011 Raabe met with the principals of Bomatic at a Las Vegas trade show and they had an opportunity to see the molding machine at issue, which Krones' German parent corporation had shipped to the United States for display at the show.

In late 2011 or early 2012 Krones offered special one-time pricing for the trade show molder because it wanted to sell the machine promptly in order to avoid or minimize storage and shipping expenses. On February 22 Raabe met with the Bomatic principals in their California office and made a presentation regarding the benefits and capabilities of the machine. On February 28 Raabe sent an email summarizing Krones' proposal.

On February 29 Bomatic responded that it was not able to work with the proposal. Raabe responded with a voice mail and an email. The email stated that he could lower the price and asked that Bomatic call him. Raabe sent a second email asking Bomatic to call that day because he wanted to finalize the opportunity that night. Bomatic responded with an email and then called Raabe during the evening of

February 29 with a counter proposal. Raabe advised Bomatic that the counter proposal would require approval from Krones. Bomatic and Raabe exchanged two emails regarding that call.

On March 3 Raabe sent an email to Bomatic stating that he had received approval for Bomatic's counter proposal and requesting an in-person meeting to discuss the open issues. On March 5 Raabe, who was in California, emailed Bomatic suggesting a meeting time later that day. Bomatic agreed and requested an email putting the agreement together. Raabe responded and sent a "Basic Quotation," which noted that the molder would be shipped from Wisconsin and that one week of on-site training was to be provided. (Raabe Decl. Ex. B.) (ECF No. 18-2.) Raabe discussed the option for that training to be provided in Wisconsin. (*Id*. at ¶ 8(f).) (ECF No. 18.)

During the March 5 in-person meeting the parties further negotiated the terms of the potential contract, and Raabe presented Bomatic with a 52-page "order confirmation" document. (*Id.* at ¶ 9, Ex. C.[2]) (ECF No. 18-3.) The detailed document was prepared in Wisconsin (Compl. ¶ 21.) and stated:

> This Contract shall be governed by and construed in accordance with the internal laws of the State of Wisconsin without reference to principles pertaining to conflicts of laws. . . . This Contract shall be deemed to have been executed and performed in the State of Wisconsin.

---

[2] Exhibit C is dated "3/6/12;" however Raabe avers he presented it on March 5.

(Raabe Decl. Ex. C, ¶ 16 at 9.) The document further stated, "[a]ll disputes arising out of or related to this contract shall be submitted to binding arbitration" and "[a]ll such proceedings shall be held in Milwaukee, Wisconsin." (*Id.* at 9, § H.) However, under the caption "Miscellaneous" the document stated, "[a]ny and all legal relationships resulting from the contract and from any ancillary business and/or consequential business for the contracting parties and for their legal successors shall only be governed by the law of the Federal Republic of Germany. The present choice of law shall also be governed by the law of the Federal Republic of Germany." (*Id.* at 6.) The document also stated that Krones would perform the electrical portion of the molder installation in California. (*Id.* at 29-30.)

Raabe met with Bomatic again on March 6 in California. During the meeting Bomatic gave Raabe a non-binding letter of intent dated March 6, 2012, (the "Letter of Intent") which stated, "Bomatic intends to send a PO [purchase order] for said machine by the end of March." (Compl. ¶ 25, Ex. A.) (ECF No. 12.) Raabe then returned to Wisconsin.

On March 13 Bomatic sent Raabe an email inquiring about the model year of the molder. Raabe responded by email that it was 2011. Bomatic emailed to acknowledge the response. On March 14 and March 16 Raabe sent emails inquiring about the status of Bomatic's financing efforts. (Raabe Decl. Ex. E.) (ECF No. 18-5.) Bomatic responded by email on March 16, stating that the financing might not be completed by the end of March.

On March 20 Raabe called Bomatic and informed it that the molder had been sold to a third party and was no longer available. He suggested that, if it could secure the necessary financing, Bomatic consider an alternative piece of equipment with similar capabilities manufactured by a Krones affiliate. Raabe also emailed Bomatic following the conversation. (Raabe Decl. Ex. F.) (ECF No. 18-6.)

Bomatic responded by a March 22 email sent to Krones in Wisconsin, asserting that it was not interested in the alternative equipment and that Krones had a contractual obligation to sell the specified equipment to Bomatic. (*Id.*) On March 28 Bomatic emailed and sent a purchase order to Krones' Wisconsin headquarters (the "Purchase Order"). (Raabe Decl. Ex. G.) (ECF No. 18-7.)

In a letter to Bomatic dated March 30 Krones stated that Bomatic had never accepted Krones' offer to sell the molder, that the molder was no longer available because another customer had purchased it, and that Krones did not and would not accept the Purchase Order. (Raabe Decl. Ex. H.) (ECF No. 18-8.)

Bomatic's attorney, located in California, sent Krones a letter dated April 6. (Raabe Decl. Ex. I.) (ECF No. 18-9.) On April 13 Krones' outside counsel in Wisconsin responded to the letter and reiterated that Krones was under no obligation to sell the molder to Bomatic. (Raabe Decl. Ex. J.) (ECF No. 18-10.) Bomatic did not respond to this letter, and did not seek an injunction or file suit.

After significant time away from his practice due to a serious illness, Bomatic's attorney prepared a Summons and Complaint and a June 3, 2013, letter

threatening legal action, which he sent from California directed to Krones' outside counsel in Wisconsin. (Beckmann Decl. Ex. D, E.) (ECF Nos. 17-4, 17-5.) The parties agreed to meet in Colorado to discuss settlement. In advance of the meeting, acceding to Krones' stated expectations, Bomatic did not file the threatened lawsuit.

In August 2013 the parties met in Colorado, but the settlement talks were unsuccessful. About 30 minutes after the talks ended Krones filed this action. On September 11 Bomatic commenced an action against Krones in California state court by filing a complaint substantially similar to the one sent to Krones in June 2013.

**Analysis**

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Research,* 338 F.3d at 779. The applicable Wisconsin state law is its long arm statute, Wis. Stat. § 801.05, which the Wisconsin Supreme Court has determined is to be liberally construed in favor of the exercise of jurisdiction. *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.,* 18 F.3d 389, 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (Wis. 1979)).

Under the due process clause, the general question is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). Contacts are not sufficient unless the defendant has

"purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Stated another way, the question is whether the defendant has obtained a benefit from Wisconsin or inflicted an injury on one of its citizens that would lead one to reasonably anticipate being haled into court here. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction." *N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 492 (7th Cir. 2014) (citations omitted). The purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on "random, fortuitous, or attenuated contacts," but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue. *Id.* at 492-93. (citation omitted.)

> To this end, the Supreme Court repeatedly has asked whether the defendant has deliberately engaged in significant activities within the forum state, *see Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 (1984); *Kulko v. California Superior Ct.,* 436 U.S. 84, 94–95, (1978), or whether it has created continuing obligations between itself and a resident of the forum, see *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 648 (1950).

*Id.* at 493. (Citation and parallel citations omitted).

With respect to contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home

forum." *Purdue Res.,* 338 F.3d at 781 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)). Instead, courts conduct a context-sensitive analysis of the contract, examining "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* (citing *Burger King,* 471 U.S. at 479). So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).

In this instance Krones' initial overtures to establish a business relationship with Bomatic were made in California and, particular to the 2012 molder negotiations, Krones solicited the sale to Bomatic in California. Solicitation of the transaction within the proposed forum is an important factor in determining whether a defendant has purposefully availed itself of a particular forum for purposes of the due process analysis. *See Federated Rural Elec.,* 18 F.3d at 394; *Madison Consulting Group v. S.C.,* 752 F.2d 1193, 1202-03 (7th Cir. 1985); *Mamco Corp. v. Max Buchanan Co., Inc.,* 793 F. Supp. 200, 203 (E.D. Wis. 1992) ("Most significantly, [defendant] initiated both the parties' business relationship and the . . . contract at issue here"). Not only did Krones solicit Bomatic business in California, but the critical in-person discussions/negotiations regarding the disputed contract also occurred at Bomatic's California offices. In other words, all major negotiations occurred in California.

The potential contract would have required that Krones ship the molder from

Wisconsin to California, and Krones would have handled the electrical installation in California. One week of training on the equipment was contemplated, and training in Wisconsin was offered as an option. However, Bomatic never set foot in Wisconsin for the purpose of the subject transaction, or for any other reason.

Bomatic sent about ten emails to the state, made one call at the express request of Raabe, and sent two documents to Krones in Wisconsin. However, making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction. *Federated Rural Elec.,* 18 F.3d at 395 (citing *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 604 (7th Cir. 1979); *Capitol Indem. Corp. v. Certain Lloyds Underwriters,* 487 F. Supp. 1115 (W.D. Wis. 1980); *Royal Globe Ins. Co. v. Logicon, Inc.,* 487 F. Supp. 1245 (N.D. Ill. 1980)). And the continued vitality of *Lakeside Bridge & Steel* was acknowledged in *Northern Grain*, 743 F.3d at 494. The Court concludes that the relevant facts construed in favor of Krones, and with any factual disputes resolved in its favor, do not establish that Bomatic purposefully availed itself of the opportunity to do business in Wisconsin.

Krones also relies on three provisions in the order confirmation. The provision regarding Wisconsin law governing the transaction, on page nine, is contrary to a provision on page six of the same document, which provides that any and all legal relationships resulting from the contract and from any ancillary business and/or consequential business for the contracting parties and for their legal successors, including the choice of law question, shall only be governed by the law of the Federal

Republic of Germany.

The second provision is the statement that "this contract" shall be deemed to have been executed and performed in the State of Wisconsin, which is in the same paragraph as the statement regarding the application of Wisconsin law and is closely related, thus presenting the same Wisconsin law/German law conflict.

The third provision is the alleged "forum selection clause," which provides that "all disputes arising out of or related to this contract shall be submitted to binding arbitration" and that "[a]ll such proceedings shall be held in Milwaukee, Wisconsin." Bomatic contends that Krones contests the validity of the contract and cannot have it both ways, and that this clause is only a provision establishing Milwaukee as the venue for any arbitration, unlike the clauses in *TruServ Corp. v. Flegles, Inc.,* 419 F.3d 584, 589 (7th Cir. 2005) and *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.,* No. 11-CV-00742, 2011 U.S. Dist. LEXIS 129724, at *3 (E.D. Wis. Nov. 7, 2011).

If a party has consented to be sued in Wisconsin, consent is treated as a valid extra-statutory basis of personal jurisdiction. *BouMatic, LLC v. Idento Operations, BV*, 13-2300, 2014 WL 3583111, at *2 (7th Cir. July 22, 2014) (citing *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 336, 555 N.W.2d 640, 644 (Wis. Ct. App. 1996)[3]). However, as argued by Bomatic, the clause relates only to arbitration. Neither

---

[3] To the extent the clause would be considered a venue clause, which is doubtful, Wisconsin state law holds that consent to venue clauses implicitly confer to courts the right to exercise personal jurisdiction. *See Kohler Co.,* 204 Wis. 2d at 337.

*TruServ Corp.* nor *H-D Michigan* involves a consent to arbitration clause, and the Court's research has not disclosed any decision of the Wisconsin courts or the Seventh Circuit Court of Appeals addressing whether an arbitration clause can be construed as impliedly consenting to personal jurisdiction. *United Financial Mortgage Corp. v. Bayshores Funding Corp.,* 245 F. Supp. 2d 884, 892-93 (N.D. Ill. 2002), addressed the issue and concluded that the arbitration clause alone was not enough to confer personal jurisdiction over the defendants.[4] *See also Foster v. Device Partners Int'l LLC,* C 12-02279 DMR, 2012 WL 6115618, at * 4 (N.D. Cal. Nov. 21, 2012) (collecting cases), report and recommendation adopted, 12-02279 SC, 2012 WL 6479235 (N.D. Cal. Dec. 10, 2012).

*United Financial* relied on federal court decisions which found that a clause establishing the forum for arbitration does not alone confer personal jurisdiction. *Id.* at 892-93 (citing *BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 261-62 (3rd Cir. 2000); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,* 956 F. Supp. 1131, 1138-39 (S.D.N.Y.1997); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 366-67 (2d Cir. 1986)). *United Financial* also noted that those courts holding personal jurisdiction existed found more contacts existed than just the agreement to arbitrate in that state. *Id.* at 893 (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.,* 103 F.3d 888, 893-95 (9th Cir. 1996)).

---

[4] The Court recognizes that it is not bound by any district court decision. However, it is in accord with *United Financial*.

*United Financial* reasoned as follows:

> The Wholesale Agreement clearly provides for arbitration of disputes in Oak Brook, Illinois. Plaintiff elected not to compel arbitration in this case, however, thus they cannot rely on the clause to bring suit against the Removing Defendants in Illinois. The Wholesale Agreement did not provide for the "future consequence" of litigation in Illinois, even though the plaintiff could have included a forum selection clause for litigation in the Wholesale Agreement, but they did not do so. The arbitration clause alone is not enough to satisfy the minimum contacts requirement of the due process clause.

*Id*. This common sense reasoning is entirely applicable to the facts presented in this case. Krones has not brought an arbitration proceeding, and it could have included a forum selection clause for litigation but did not.

Referring to *Burger King,* 471 U.S. 462, Krones states, "the facts here more closely resemble those in *Burger King* than those in *Lakeside*." (Krones' Brief at 22.) (ECF No. 16.) However, the facts of *Burger King* reveal that Krones' analogy is inaccurate. *Burger King* involved a suit in its home jurisdiction of Florida against a Michigan franchisee. Burger King alleged breach of the franchise agreement for failure to make required payments and that the franchisee was tortiously infringing Burger King's trademarks and service marks through its continued, unauthorized operation of a Burger King restaurant. *Id.* at 468-69. Finding that personal jurisdiction over the franchisee in Florida did not violate due process, the Supreme Court reasoned that by signing the franchise agreement the franchisee "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching

contacts with Burger King in Florida" and that by the franchisee's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" The Court further stated that the franchisee's "refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida." *Id.* at 480.

This case does not involve a carefully structured relationship, exacting regulation of the defendant's business from Wisconsin, injury to the forum state caused by non-payment, or violation of trademarks. The facts here bear far more resemblance to the facts in *Lakeside*, which involved a single shipment of goods from Wisconsin to an out-of-state defendant at the defendant's request.

At bottom, Bomatic's only contacts with Wisconsin were some emails and phone calls to Raabe, a letter of intent and a purchase order submitted to a company which happens to be located in Wisconsin, and some letters exchanged between California and Wisconsin counsel after the subject dispute developed. Neither the subject transaction nor any other business transaction was ever actually performed between the parties. Even when factual disputes are resolved in favor of Krones and the circumstances are considered as a whole, Krones has not established sufficient minimum contacts to assert personal jurisdiction over Bomatic. Bomatic's contacts

were fortuitous and do not demonstrate a real relationship with Wisconsin with respect to the transaction at issue. *See N. Grain Mktg.,* 743 F.3d at 492-93. Thus, Bomatic's motion to dismiss is granted based on lack of personal jurisdiction. There is no need to address its alternative ground for dismissal.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Bomatic's motion to dismiss is **GRANTED** (ECF No. 9) based on lack of personal jurisdiction; and,

The Clerk of Court is **DIRECTED TO ENTER** judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2014.

**BY THE COURT:**

*/s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**